## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

| | |
|---|---|
| ADOPTEE RIGHTS LAW CENTER PLLC,<br><br>Plaintiff,<br><br>v.<br><br>U.S. CITIZENSHIP AND IMMIGRATION SERVICES,<br><br>Defendant. | Case No. _____<br><br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

## INTRODUCTION AND BACKGROUND

1. This is an action under the Freedom of Information Act ("FOIA" or the "Act"), 5 U.S.C. § 552, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, to declare unlawful and enjoin the United States Citizenship and Immigration Services ("USCIS") from improperly withholding all reasonably segregable, nonexempt agency records.

2. Through the FOIA requests described herein, Plaintiff sought agency records in the form of Alien File ("A-File") requests from Defendant USCIS.

3. Defendant USCIS failed to make timely determinations of Plaintiff's FOIA requests as required by law, failed to adequately search for and respond to Plaintiff's FOIA requests, and improperly closed or denied Plaintiff's FOIA requests.

4.      Plaintiff Adoptee Rights Law Center PLLC, a law firm dedicated to providing legal services for adopted people, including inter-country adopted people, seeks declaratory and injunctive relief requiring Defendant to immediately process and release the requested records.

## JURISDICTION AND VENUE

5.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B). Plaintiff's request for declaratory and other relief is properly subject to this Court's subject-matter jurisdiction pursuant to 5 U.S.C. §§ 552(a)(4)(F), 701-06 and 28 U.S.C. §§ 1331, 2201(a), and 2202.

6.      Venue is proper within this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1391(b)(1), (b)(2), and (e)(1) as Plaintiff has its principal place of business in this District.

7.      Plaintiff has constructively or actually exhausted all administrative remedies in connection with Plaintiff's FOIA requests, as detailed below.

8.      Because Plaintiff brings this action after constructively or actually exhausting administrative remedies, this Court's jurisdiction is based on 5 U.S.C. § 552(a)(4)(B) and 5 U.S.C. § 552(a)(6)(C)(i).

9.      Under FOIA, this Court may retain jurisdiction and allow Defendant additional time to complete the processing of Plaintiff's FOIA

2

requests if, and only if, the government can demonstrate that exceptional circumstances exist *and* its due diligence in responses to Plaintiff's requests. Because Defendant can demonstrate neither, this Court has jurisdiction to declare unlawful the agency's withholdings and order immediate production of records unlawfully withheld.

## PARTIES

10.     Mr. Gregory Luce, Esq., is the founder and sole attorney for Adoptee Rights Law Center, PLLC, a law firm dedicated to providing legal services to adopted people. At Adoptee Rights Law Center, Mr. Luce represents intercountry adopted people on issues related to immigration and U.S. citizenship, including matters such as naturalization, renewal of legal permanent residency status, or obtaining proof of U.S. citizenship.[1]

11.     Mr. Luce is also a co-founder and the executive director of Adoptee United Inc., a national nonprofit charitable organization dedicated to securing identity rights, U.S. citizenship, and equality for all adult adopted people in the United States.[2] He is considered a nationally recognized expert

---

[1] *See Adoptee Rights Law Center*, (last visited July 22, 2026), https://adopteerightslaw.com/.

[2] *See Adoptees United*, (last visited July 22, 2026), https://adopteesunited.org/.

on U.S. immigration issues that adult intercountry adopted people encounter and has appeared in the media and press about his work.[3]

12.    Defendant USCIS is a component agency of DHS and is an agency within the meaning of 5 U.S.C. § 552(f)(1). Among other duties, USCIS is responsible for adjudicating petitions and applications for certain immigration benefits in the United States. USCIS possesses and exerts custody and control over the vast majority of individuals' Alien Registration Files, also known as A-Files.

## FACTUAL ALLEGATIONS

13.    A-Files contain critical information regarding a noncitizen or naturalized citizen's eligibility to apply for an immigration benefit or status, including obtaining proof of citizenship, applying for lawful permanent resident status, and many other immigration benefits. Submitting a FOIA

---

[3] *See*, *e.g.*, Elizabeth Williamson, *Born Abroad and Fearful of ICE, Adoptees Try to Prove They Belong*, N.Y. TIMES (Mar. 23, 2026), https://nytimes.com/2026/03/23/us/politics/foreign-adoptees-citizenship-immigration-enforcement.html; Juliana Kim, *She grew up believing she was a U.S. citizen. The she applied for a passport*, NPR (April 19, 2025), https://www.npr.org/2025/04/19/g-s1-60166/trump-immigration-citizenship-deportation-adoptee-south-korea; Melissa Olson, *With Minnesota law change in effect, adoptees can access original birth records*, MPR NEWS (July 1, 2024), http://mprnews.org/story/2024/07/01/adoptee-law-change-minnesota-born-access-original-birth-records; George Wright, *The American adoptees who fear deportation to a country they can't remember*, BBC (Oct. 30, 2025), https://www.bbc.com/news/articles/cwy1n438dk4o.

request for a noncitizen's A-File is one of the sole, if not only, means of obtaining these critical records.

### USCIS's A-File obligations after *Nightingale v. USCIS*

14.    In 2020, the Northern District of California issued a permanent injunction for a nationwide class of individuals and their attorneys. The court ordered USCIS and DHS to cease violating FOIA's deadlines for adjudicating requests for A-Files, to eliminate USCIS's backlogs, and to provide quarterly compliance reports to the court and class counsel. *See Nightingale v. U.S. Citizenship & Immigr. Servs.*, 507 F.Supp. 3d 1193 (N.D. Cal. 2020). In the proceedings, USCIS admitted that it had not complied with FOIA's deadlines concerning A-Files for at least eight years. *Id.* at 1196.

15.    Regarding the essential nature of FOIA's importance in providing the contents of A-Files and USCIS's noncompliance with FOIA, the Court in *Nightingale* stated:

> This noncompliance has real life consequences. Defendants serve as custodians of A-Files, prosecutors in removal proceedings, and adjudicators of applications for immigration benefits. Their delay in processing A-File FOIA requests deprives plaintiffs of the information they need to defend against removal, to obtain benefits, and to gain citizenship. It undermines the fairness of immigration proceedings, particularly for the vast number of noncitizens who navigate our immigration system without the assistance of counsel.

*Id.*

16.     The court affirmed that "there is no adequate substitute for the information contained in an A-File and FOIA is the primary, *if not the only*, mechanism for accessing A-Files." *Id.* at 1199 (emphasis added).

17.     Since the Northern District of California's permanent injunction, USCIS began working through its backlog and towards compliance, including hiring a number of contractors to comply with the injunction. *See Nightingale*, No. 3:19-cv-03512-WHO, ECF No. 97 *Defendants' Compliance Report* at ¶ 5 (Mar. 17, 2021).

18.     In USCIS's June 2025 Status Report for the *Nightingale* litigation, USCIS noted that after the administration's April 2025 voluntary workforce transition programs, that "[m]ore than a quarter (approximately 27%) of the FOIA positions in the USCIS FOIA office" were vacant and subject to a hiring freeze until at least July 15, 2025. *See Nightingale*, No. 3:19-cv-03512-WHO, ECF No. 183 *Defendants' Eighteenth Compliance Report* at ¶ 6 (June 16, 2025). USCIS held out this explanation as the reason for the sudden drop in its completion rate from over 99 percent in the prior reporting period down to approximately 59.39 percent. *See id.* at ¶¶ 3, 5.

19.     Suddenly, during the next reporting period in September 2025, USCIS reported a remarkable jump back up to a nearly 92 percent timely completion rate. *See Nightingale*, No. 3:19-cv-03512-WHO, ECF No. 188 *Defendants' Nineteenth Compliance Report* at ¶ 4 (Sept. 15, 2025). Yet,

6

USCIS also averred that its FOIA program continued to "experience severe staffing and other resource constraints . . . [a]s of September 14, 2025, the percentage of vacant or unmanned positions across the USCIS FOIA program has risen to 29.33%" and that "[t]he hiring freeze applicable to these vacancies has been extended to at least October 15, 2025." *Id.* at ¶ 6 (punctuation omitted).

20. On December 19, 2025, plaintiffs' counsel in *Nightingale* filed a whistleblower report,[4] released by the Government Accountability Project, that laid out how USCIS had been violating the *Nightingale* Court Order and "manufactur[ing] compliance" with the order. The whistleblower report is attached as Exhibit A, Protected Whistleblower Disclosure. The report went on to confirm:

> In its December 15, 2025 compliance report, USCIS claimed that since its September 15, 2025 submission the agency has reduced its A-File FOIA backlog by 99.96% to only two cases and attributed this success to staffing measures. This purported elimination occurred while the agency lost roughly one-quarter of its FOIA personnel and endured a 43-day federal shutdown that impacted the availability of external support from other components of the Department of Homeland Security (DHS). These circumstances alongside Mr. Armstrong's disclosures suggest the reported reduction does not reflect timely, good-faith FOIA processing but rather mass closures of requests and other procedural mechanisms that remove

---

[4] *See Nightingale v. U.S. Citizenship and Immigration Services*, 3:19-cv-03512, ECF No. 193, 193-1 (N.D. Cal. Dec 19, 2025).

requests from the pending inventory without reasonable searches or release of responsive records.

*See* Exhibit A at 1.

21. The report details multiple rounds of USCIS policy changes that "result in closing requests prematurely for reasons not permitted by statute . . . ." *See id.* at 5. This included policies instructing USCIS staff to close requests from Cuban nationals as "no records,"; "redacting entire forms from immigration A-Files citing (b)(6) and (b)(7) privacy and law enforcement exemptions, even though the withheld information was initially provided to DHS by the noncitizen"; withholding any correspondence "not directly to or from the requester, even correspondence sent by or to their attorney from USCIS"; "inappropriately designat[ing] certain documents as 'out of scope,'" including documents provided by the noncitizen in the language of their country of origin; and redacting documents such as joint tax returns, utility bills, and marriage and divorce certificates. *See id.* at 5-6 (underlining added).

22. The report sets forth a straightforward intent[5] behind these instructions—"to process requests as fast as possible while sacrificing release of content to which requesters are legally entitled . . . under the new policy,

_____

[5] Management at USCIS additionally "sent emails demonstrating their motive to find ways to maximize case closure as a means to reduce the FOIA backlog." *See* Exhibit A, Protected Whistleblower Disclosure at 6.

processors can quickly withhold in full documents that contain information about persons other than the requester, thus avoiding an individual analysis." *See id.* at 6.

23. A second round of USCIS policy changes began throwing out A-File FOIA requests at the intake stage. This included closing requests for use of an attorney's address to receive correspondence in lieu of the noncitizen's; closing requests where the requester's surname information does not exactly match USCIS's records, – including records that have a compound surname — "*even when there is a match between the A-number of the requester and the A-number in the file,*" (emphasis in original); closing requests for inverting the month and date of a non-citizen's birth, which is common amongst countries outside the U.S.; and closing requests for discrepancies in <u>optional</u> information provided by a noncitizen. *See id.* at 7-10 (underlining emphasis added).

**Changes to withholdings and redactions within A-File records**

24. Mr. Luce routinely files FOIA requests seeking entire A-Files on behalf of Adoptee Rights Law Center clients. Since April 2024 alone, Mr. Luce has filed over 200 FOIA requests for Adoptee Rights Law Center clients. The vast majority of these requests were comprised of A-File FOIA requests.

25. Around early May 2025, Mr. Luce noticed a significant change in the number of documents in clients' A-Files that were either partially

redacted or entirely withheld. Prior to May 2025, when seeking A-File records, Mr. Luce received most of the information in the A-File, and the records contained limited redactions or withholdings of information concerning unrelated third parties or USCIS personnel.

26.     Of the approximately 67 A-File FOIA requests that Mr. Luce filed on behalf of clients released by USCIS between May 18, 2024, and April 17, 2025, an average of 10 percent of the released documents were partially redacted or entirely withheld. Of the approximately 100 A-File FOIA requests that Mr. Luce filed and that USCIS has released since April 17, 2025, an average of 83 percent of the released documents were partially or entirely withheld.

27.     This has had a significant impact on Mr. Luce's ability to assist clients with their cases. The scope of information USCIS is withholding impairs his ability to understand what specific evidence he needs to provide USCIS for clients seeking immigration benefits. He is also unable, in some cases, to identify or verify who legally adopted a client, as the information released to Mr. Luce after USCIS's redactions and/or withholdings does not provide sufficient information for him to reliably identify the client's adoptive or birth parents.

28.     In one recent case, all of the information related to his client's adoptive parents was removed from the file, even though his client had

10

*provided her parents' information to USCIS in her own immigration benefit application.* In the vast majority of Adoptee Rights Law Centers' recent FOIA releases for client A-File records, the information is redacted or entirely withheld, including foreign birth records and any state-issued records issued after adoption.

29.     In nearly every A-File FOIA request Mr. Luce has filed since early April 2025 on behalf of Adoptee Rights Law Center clients, any information about anyone except the client is entirely withheld or redacted from the released file. As an example, in the case of client K.L., USCIS provided 93 total pages in response to Mr. Luce's FOIA request. Of the 93 pages, *90 percent* were either partially redacted or entirely withheld.

## Plaintiff's A-File FOIA requests and appeals

30.     FOIA requires an agency to justify any withholdings of records under at least one of the nine enumerated exemptions in the statute. *See* 5 U.S.C. § 552(b)(1)-(9).

31.     Because Plaintiff filed the following A-File FOIA requests after January 1, 2025, the requests are all additionally subject to the *Nightingale* injunction.

32.     On March 20, 2025, on behalf of client KB, Plaintiff filed a request for KB's A-File records. USCIS received the request and gave it a receipt number of NRC2025138043. On May 7, 2025, USCIS released records,

many heavily redacted. On May 21, 2025, Plaintiff filed an appeal to which the agency assigned an appeal number of APP2026001903. As of the time of this filing, USCIS has yet to decide the appeal.

33.    On March 27, 2025, on behalf of client NA, Plaintiff filed a request for NA's A-File records. USCIS received the request and gave it a receipt number of NRC2025152886. On May 18, 2025, USCIS released records, many heavily redacted. On May 20, 2025, Plaintiff filed an appeal to which the agency assigned an appeal number of APP2026001874. On July 21, 2026, over one year from the time Plaintiff filed the appeal, USCIS released 41 additional pages to Plaintiff. Of the 41 additional pages, USCIS released 34 in full and 7 pages in part containing redactions pursuant to 5 U.S.C. § 552(b)(6), (b)(7)(C), and (b)(7)(F).

34.    On March 28, 2025, Plaintiff filed a request on behalf of client NDW for NDW's A-File records. USCIS received the request and gave it a receipt number of NRC2025153593. On May 19, 2025, USCIS released records, many heavily redacted. On May 21, 2025, Plaintiff filed an appeal to which the agency assigned an appeal number of APP2026001893. As of the time of this filing, USCIS has yet to decide the appeal.

35.    On April 3, 2025, Plaintiff filed a request on behalf of client RLW for RLW's A-File records. USCIS received the request and gave it a receipt number of  NRC2025164912. On May 29, 2025, USCIS released records,

many heavily redacted. On July 4, 2025, Plaintiff filed an appeal to which the agency assigned an appeal number of APP2026003094. At the time of this filing, USCIS has yet to decide the appeal.

36.     On June 16, 2025, on behalf of client EC, Plaintiff filed a request for EC's A-File records. USCIS received the request and gave it a receipt number of NRC2025286866. On July 23, 2025, USCIS released records, many heavily redacted. On August 21, 2025, Plaintiff filed an appeal to which the agency assigned an appeal number of APP2026004741. As of the time of this filing, USCIS has yet to decide the appeal.

37.     On August 13, 2025, on behalf of client IM, Plaintiff filed a request for IM's A-File records. USCIS received the request and gave it a receipt number of NRC2025380120. On October 16, 2025, USCIS released records containing redactions. On October 22, 2025, Plaintiff filed an appeal to which the agency assigned an appeal number of APP2026007595. As of the time of this filing, USCIS has yet to decide the appeal.

38.     On August 25, 2025, on behalf of client IT, Plaintiff filed a request for IT's A-File records. USCIS received the request and gave it a receipt number of NRC2025397549. On October 20, 2025, USCIS released records containing redactions. On October 22, 2025, Plaintiff filed an appeal to which the agency assigned an appeal number of APP2026007592. As of the time of this filing, USCIS has yet to decide the appeal.

13

39.     On September 23, 2025, on behalf of client TE, Plaintiff filed a request for TE's A-File records. USCIS received the request and gave it a receipt number of NRC2025440464. On September 25, 2025, USCIS rejected Plaintiff's FOIA request. Plaintiff filed an appeal on October 22, 2025, and the agency applied an appeal number of APP2026007596. As of the time of this filing, USCIS has yet to decide the appeal.

40.     On August 1, 2025, on behalf of client KL, Plaintiff filed a request for KL's A-File records. USCIS received the request and gave it a receipt number of NRC2025362288. On August 27, 2025, USCIS released records, many heavily redacted. On October 30, 2025, Plaintiff filed an appeal to which the agency applied an appeal number of APP2026008204. As of the time of this filing, USCIS has yet to decide the appeal.

41.     On August 21, 2025, on behalf of client MC, Plaintiff filed a request for MC's A-File records. USCIS received the request and gave it a receipt number of NRC2025392673. On October 16, 2025, USCIS released records, many heavily redacted. On October 30, 2025, Plaintiff filed an appeal to which the agency applied an appeal number of APP2026008213. As of the time of this filing, USCIS has yet to decide the appeal.

42.     On September 20, 2025, on behalf of client AC, Plaintiff filed a request for AC's A-File records. USCIS received the request and gave it a receipt number of NRC2025436907. On October 29, 2025, USCIS released

records, many heavily redacted. On October 30, 2025, Plaintiff filed an appeal to which the agency assigned an appeal number of APP2026008208. As of the time of this filing, USCIS has yet to decide the appeal.

43. On August 28, 2025, on behalf of client MA, Plaintiff filed a request for MA's A-File records. USCIS received the request and gave it a receipt number of NRC2025404165. On November 12, 2025, USCIS released records, many heavily redacted. On November 18, 2025, Plaintiff filed an appeal to which the agency assigned an appeal number of APP2026009565. As of the time of this filing, USCIS has yet to decide the appeal.

44. On November 10, 2025, on behalf of client GG, Plaintiff filed a request for GG's A-File records. USCIS received the request and gave it a receipt number of NRC2025512779. On November 24, 2025, USCIS released records, many heavily redacted. On November 26, 2025, Plaintiff filed an appeal to which the agency assigned an appeal number of APP2026010176. As of the time of this filing, USCIS has yet to decide the appeal.

45. On November 18, 2025, on behalf of client ANe, Plaintiff filed a request for ANe's A-File records. USCIS received the request and gave it a receipt number of NRC2025525180. On December 7, 2025, USCIS released records containing redactions. Plaintiff filed an appeal the same day to which the agency assigned an appeal number of APP2026011014. As of the time of this filing, USCIS has yet to decide the appeal.

46. On November 5, 2025, on behalf of client JaR, Plaintiff filed a request for JaR's A-File records. USCIS received the request and gave it a receipt number of NRC2025507892. On December 3, 2025, USCIS rejected Plaintiff's FOIA request. Plaintiff filed an appeal on December 17, 2025, and the agency assigned an appeal number of APP2026012068. As of the time of this filing, USCIS has yet to decide the appeal.

47. Plaintiff filed four different FOIA requests to USCIS on behalf of client JJDR, who sought their A-File to correct USCIS's own mistake of listing JJDR's date of birth incorrectly on JJDR's Certificate of Citizenship. USCIS rejected Plaintiff's first FOIA request, filed on September 12, 2025, which had been assigned a receipt number of NRC2025425088, by claiming that there were no records responsive to Plaintiff's request nor records matching JJDR's name or parents' names.

48. Plaintiff filed JJDR's second A-File FOIA request on November 13, 2025, alongside valid verifications of identity signed by JJDR's parents as well as JJDR's previously issued Certificate of Citizenship issued by USCIS. USCIS assigned the request a receipt number of NRC2025520396 and rejected the request, claiming that there were no responsive records for the request and that there were no records matching JJDR's country of birth.

49. Plaintiff filed JJDR's third A-File FOIA request on March 4, 2026, accompanied by the various ways JJDR's name and birth date may

16

appear within USCIS records, and JJDR's previously issued Certificate of Citizenship issued by USCIS. USCIS assigned the request a receipt number of NRC2026092832 and rejected Plaintiff's request, claiming the agency could not find records matching JJDR's date of birth that Plaintiff provided in the request.

50.     For each rejected request for JJDR, Plaintiff wrote to the FOIA and Privacy Act request email in order to seek clarification for why the requests were rejected. For Plaintiff's third rejected FOIA request for JJDR's A-File, Plaintiff pointed to the three different, and therefore inconsistent, justifications the agency had employed to reject Plaintiff's three FOIA requests.

51.     Plaintiff filed a fourth A-File FOIA request for JJDR's A-File on March 10, 2026. USCIS assigned the request a receipt number of NRC2026101257 and, in a letter to Plaintiff, stated that the agency had in fact identified 52 pages responsive to the request. Of these 52 pages, USCIS only released sixteen pages in their entirety, released twenty-three pages in part, and withheld thirteen pages in full, citing to FOIA exemptions (b)(3), (b)(6), and law enforcement investigation FOIA exemptions (b)(7)(c) and (b)(7)(E) to justify the partial and entire withholdings of records within JJDR's A-File.

52.    On December 17, 2025, on behalf of client AG, Plaintiff filed a request for AG's A-File records. USCIS received the request and gave it a receipt number of NRC2025566823. On December 29, 2025, USCIS released records, heavily redacted. On December 30, 2025, Plaintiff filed an appeal, which the agency assigned an appeal number of APP2026012830. As of the time of this filing, USCIS has yet to decide the appeal.

53.    On January 28, 2026, on behalf of client AB, Plaintiff filed a request for AB's A-File records. USCIS received the request and gave it a receipt number of NRC2026039948. On February 13, 2026, USCIS released records, heavily redacted. On February 25, 2026, Plaintiff filed an appeal to which the agency assigned an appeal number of APP2026007557REQ. As of the time of this filing, USCIS has yet to decide the appeal.

54.    On January 30, 2026, on behalf of client LN, Plaintiff filed a request for LN's A-File records. USCIS received the request and gave it a receipt number of NRC2026043467. On February 18, 2026, USCIS rejected Plaintiff's FOIA request. Plaintiff filed an appeal on February 27, 2026, and the agency assigned an appeal number of APP2026007868REQ. As of the time of this filing, USCIS has yet to decide the appeal.

55.    On February 16, 2026, on behalf of client DL, Plaintiff filed a request for DL's A-File records. USCIS received the request and gave it a receipt number of NRC2026067717. On February 24, 2026, USCIS rejected

18

Plaintiff's FOIA request under the rationale that the parents cited in the request did not match the parents in the records, despite providing a copy of DL's legal permanent resident card. Plaintiff filed an appeal on February 27, 2026, and the agency assigned an appeal number of APP2026007876REQ.

56.     Plaintiff subsequently filed a new FOIA request for DL's A-File. Plaintiff received records, but only after stating "parents not known" on the new request, which Plaintiff has been forced to do to receive A-File records for A-File FOIA requests where USCIS claims the parents listed in the request do not match the parents listed in the records.

57.     On January 31, 2026, on behalf of its client AL, Plaintiff filed a request for AL's A-File records, listing AL's Alien Registration number. USCIS received the request and gave it a receipt number of NRC2026044266. On February 20, 2026, USCIS rejected Plaintiff's FOIA request, stating that the parents cited in the request did not match the parents in the records. Plaintiff filed an appeal on February 27, 2026, and the agency assigned an appeal number of APP2026007883REQ. As of the time of this filing, USCIS has yet to decide the appeal.

58.     Plaintiff subsequently filed a new FOIA request for AL's A-File. Plaintiff received records, but only after stating "parents not known" on the new request, which Plaintiff has been forced to do to receive A-File records

19

for A-File FOIA requests where USCIS claims the parents listed in the request do not match the parents listed in the records.

59.   With respect to each of the foregoing A-File requests, Plaintiff has actually or constructively exhausted his administrative remedies.

**Plaintiff's FOIA request for USCIS A-File FOIA processing changes**

60.   After encountering the repeated problem of USCIS's overused exemptions in response to A-File FOIA requests, on May 21, 2025, Plaintiff also submitted a request to USCIS seeking "records about any changes since January 19, 2025 in how [USCIS] handles FOIA requests for an individual's entire Alien File, including any FOIA requests for the Alien File filed by an attorney/representative on behalf of a client or individual." Plaintiff's A-File FOIA processing guidance request is attached as Exhibit B.

61.   In the request, Plaintiff enumerated with specificity the scope of the request and also sought a fee waiver under several bases, including under the rationale that the information was not sought for commercial purposes and would be disseminated to the public free of charge. *See* Exhibit B at 1-3.

62.   On September 11, 2025, USCIS responded to Plaintiff's request. USCIS acknowledged receipt of the request, assigned it a control number of COW2025004588, and granted Plaintiff's request for a fee waiver. USCIS

20

additionally invoked a ten-day extension to respond to the request. *See id.* at 4-5.

63.     At the time of this filing, USCIS has not made a determination on Plaintiff's A-File FOIA processing guidance request and has not produced a single record in response to the request.

64.     Plaintiff has constructively exhausted administrative remedies as to the A-File FOIA processing guidance request.

65.     At the time of this filing, USCIS has not conducted a search for records responsive to Plaintiff's A-File FOIA processing guidance request.

66.     USCIS has not made a decision or otherwise taken action on Plaintiff's A-File FOIA processing guidance request that could be appealed.

67.     USCIS has not indicated or communicated to Plaintiff what records it intends to produce and what records it intends to withhold.

68.     USCIS has failed to make the records responsive to Plaintiff's A-File FOIA processing guidance request promptly available.

69.     USCIS has violated FOIA's timing provisions with respect to Plaintiff's A-File FOIA processing guidance request.

70.     USCIS has an ongoing pattern or practice of improperly withholding records from Plaintiff in violation of FOIA.

71.   Under FOIA, USCIS has a duty to affirmatively disclose up-to-date information regarding its policies, procedures, memoranda, and other documentation surrounding its FOIA processes.

72.   Under FOIA, USCIS cannot apply any FOIA processing interpretation, staff manual, or instruction on a FOIA request that affects a member of the public, including Plaintiff and his clients, unless it is first made available to the public or the individual member of the public has actual and timely notice of the terms thereof.

**Plaintiff's meta-FOIA request to USCIS**

73.   On November 26, 2025, Plaintiff filed a "meta-FOIA" request seeking the processing notes, taskers, suspension trackers, FOIA tasking worksheets, and other records related to the agency's handling of a discrete set of 14 A-File FOIA requests previously filed by Plaintiff. Plaintiff's meta-FOIA request is attached as Exhibit C.

74.   On December 22, 2025, USCIS administratively closed Plaintiff's meta-FOIA request under the basis that Plaintiff "did not provide complete verification of identity since the subject of the record's date of birth was not provided" and for finding the "subject of record's signature is unacceptable for one of the following reasons" without specifying which of the four reasons applied to Plaintiff's request. *See* Exhibit C at 2.

75.    On December 30, 2025, Plaintiff appealed USCIS's administrative closure of the request. USCIS received the appeal and applied the appeal number APP2025020625REQ.[6]

76.    As of the time of this filing, USCIS has yet to decide the appeal.

77.    USCIS has not indicated or communicated to Plaintiff what records it intends to produce and what records it intends to withhold.

78.    USCIS has failed to make the records responsive to Plaintiff's meta-FOIA request promptly available.

79.    USCIS has violated FOIA's timing provisions with respect to Plaintiff's meta-FOIA request.

**Government agencies are held to a higher burden of timeliness**

80.    Congress's intent was clear that under FOIA, government agencies are held to a higher burden of timeliness. *See Sejas v. U.S. Atty's Off.*, 22-CV-9358 (JPO) at *2 (S.D.N.Y. Jan. 22, 2025) ("It bears emphasizing that FOIA requests are serious matters that must be dealt with on a timely basis, lest the government be viewed as 'utilizing administrative delay to

---

[6] The appeal number does not appear in Exhibit C. Plaintiff filed the appeal electronically via USCIS's website, *see* Exhibit C at 3, and received an appeal number on USCIS's online FOIA request portal system and noted the appeal number, but has since been unable to retrieve a printout showing the appeal number.

shield FOIA disputes from judicial review.'") (citing *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 715 (D.C. Cir. 1977)) (emphasis added).

81.   This pattern or practice of USCIS's arbitrary denials of Plaintiff's A-File requests on behalf of clients violates FOIA's mandates, indicates bad faith or at least arbitrary and capricious conduct by USCIS, and prejudices Plaintiff and Plaintiff's clients by preventing them from timely obtaining A-File records.

82.   In the same fashion, USCIS's pattern and practice of violating FOIA's timeline requirements for deciding requests and appeals indicates bad faith or at least arbitrary and capricious conduct by USCIS, and prejudices Plaintiff and Plaintiff's clients by preventing them from timely obtaining A-File records.

83.   While discovery is generally not warranted in most FOIA actions, as numerous courts have found, improper withholding is a sufficient basis to conduct formal discovery. *See Landmark Legal Found. v. Env't Prot. Agency*, No. 1:2012cv0176 at 11-12 (D.D.C. Aug. 14, 2013) (granting limited discovery in a FOIA case where "the record leaves open the possibility that, one way or another, the agency engaged in bad faith conduct . . . .").

//

//

//

24

## CLAIMS FOR RELIEF

### COUNT ONE
### Failure to make a determination in violation of FOIA

84.    Plaintiff incorporates the allegations in the paragraphs above as though fully set forth here.

85.    Defendant and its components are obligated under 5 U.S.C. § 552(a)(6) to make a determination with respect to Plaintiff's requests and/or appeals within the statutorily mandated time period of 20 business days, to be extended by no more than 10 business days in the event that the agency notifies the requester in writing of the existence of "unusual circumstances." When Defendant failed to make a determination or respond to a FOIA request or an appeal within the statutory deadline, it constructively denied the request. *See Oglesby v. U.S. Dep't of Army*, 920 F.2d 57 (D.C. Cir. 1990) ("Congress adopted the time limit provision in the FOIA in order to 'contribute to the fuller and faster release of information, which is the basic objective of the Act.'") (quoting H.R. Rep. No. 93-876, 93d Cong. 2d Sess., reprinted (1974) U.S. Code Cong. & Ad. News 6267 at 6271).

86.    Defendant and its components have a pattern or practice of failing to make determinations regarding FOIA requests or appeals within the statutory time period. No legal basis exists for the Defendant's pattern or practice of failing to meet the statutory determination and time period requirements with respect to FOIA requests and/or appeals it receives.

## COUNT TWO
### Failure to conduct an adequate search in violation of FOIA

87.    Plaintiff incorporates the allegations in the paragraphs above as though fully set forth here.

88.    Plaintiff properly requested records within the possession, custody, and control of Defendant.

89.    Defendant has failed to conduct an adequate search for responsive records in Plaintiff's A-File FOIA requests filed on behalf of Adoptee Rights Law Center clients.

90.    Defendant has not produced any documents in response to the A-File FOIA processing guidance request and has not communicated a determination as to Plaintiff's A-File FOIA processing guidance request.

91.    Defendant has not produced any documents in response to the meta-FOIA request.

92.    Defendant and its subcomponents are obligated under 5 U.S.C. § 552(a)(3)(C) to conduct a reasonable search for records responsive to Plaintiff's requests within FOIA's timing requirements.

93.    Defendant has not conducted a "search reasonably calculated to uncover all relevant documents" pursuant to Plaintiff's detailed and specific A-File FOIA processing guidance request. Defendant is also required and has

26

failed to "make reasonable efforts to search for the records in electronic form or format." 5 U.S.C. § 552(a)(3)(C).

94.     Defendant has also failed to determine a production scope and which records it intends to withhold and which it intends to produce.

95.     Defendant has a pattern or practice of failing to conduct an adequate search for responsive records to FOIA requests within FOIA's timing requirements. No legal basis exists for Defendant's pattern or practice of failing to meet the statutory deadline with respect to conducting an adequate search.

96.     Plaintiff is entitled to declaratory and injunctive relief requiring Defendant to promptly search for and produce all responsive non-exempt records and provide indexes justifying any withholding of responsive records they believe are exempt.

## COUNT THREE
**Wrongful withholding of non-exempt responsive records**

97.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

98.     Plaintiff properly requested records within the possession, custody, and control of Defendant.

99. Defendant is improperly withholding non-exempt agency records by failing to produce the non-exempt records responsive to Plaintiff's requests.

100. Defendant is improperly withholding non-exempt agency records responsive to Plaintiff's requests by failing to segregate exempt information in otherwise non-exempt agency records.

101. Defendant's failure to provide all non-exempt responsive records violates FOIA.

102. Plaintiff is entitled to declaratory and injunctive relief requiring Defendant to promptly produce all non-exempt records responsive to Plaintiff's FOIA requests, segregate all exempted information in otherwise non-exempt records, and provide indexes justifying the withholding of any responsive records they argue are exempt.

## COUNT FOUR
**Failure to publish opinions, policies, administrative staff manuals, and instructions to staff that affect the public**

103. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

104. Defendant and its components are obligated under 5 U.S.C. § (a)(1). et seq. to affirmatively disclose to the public, via the Federal Register, any substantive rules of general applicability as authorized by law, and statements of general policy or interpretations of general applicability

28

formulated and adopted by the agency, as well as any amendments, revisions, or repeals of the aforementioned. The failure to do so, except where a person, including Plaintiff, has actual and timely notice of the terms thereof, may not in any manner be adversely affected by a matter required to be published in the Federal Register and not so published.

105. Defendant has not published its current FOIA processing policy or interpretation or any changes thereto in the Federal Register and is in violation of FOIA and therefore cannot apply its current FOIA processing policy as to Plaintiff.

106. Under 5 U.S.C. § (a)(2) et seq., the agency has a duty to affirmatively disclose all statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register; administrative staff manuals and instructions to staff that affect a member of the public; or records that because of their subject matter are likely to become the subject of subsequent requests for substantially the same records. If the agency fails to do so, it cannot rely, use, or cite as precedent against a party unless it has been made available or published, or the party has actual and timely notice of the terms thereof.

107. Defendant, in violation of FOIA, has not published its current statement of policy and interpretations that have been adopted by the agency, nor its administrative staff manuals and instructions to staff that

affect members of the public, including Plaintiff, and therefore cannot apply any of the aforementioned against Plaintiff.

## COUNT FIVE
### Pattern and practice violations of time limits

108.   Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs as if fully set forth herein.

109.   Defendant has established a pattern and practice of violating FOIA's statutory time limits.

110.   The "promptly available" requirement typically means "within days or a few weeks of a determination, not months or years." *Sierra Club v. U.S. Env't Prot. Agency*, 2018 WL 10419238, at *5 (N.D. Cal. Dec. 26, 2018) (quoting *Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 188 (D.C. Cir. 2013)) (internal quotation marks omitted); *Owen v. U.S. Immigr. & Customs Enf't*, 2023 WL 9470904, at *6 (C.D. Cal. Jan. 12, 2023).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court to:

a.  Declare, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that Defendant violated the Freedom of Information Act, 5 U.S.C. § 552;

b.  Declare that Plaintiff is entitled to a determination on Plaintiff's FOIA requests from Defendant;

c.  Declare that Plaintiff is entitled to disclosure of the requested records;

d.  Declare that Defendant has failed to conduct an adequate search for responsive records and has failed to segregate and produce any non-exempt portions of those records;

e.  Declare that Defendant has violated FOIA by failing to publish its current FOIA guidance, instructions, or policies;

f.  Declare that Defendant's violation of FOIA by failing to publish its current FOIA guidance, instructions, or policies renders its application of that guidance unlawful;

g.  Order Defendant to begin searching for responsive records to Plaintiff's requests;

h.  Order expeditious proceedings in this action pursuant to 5 U.S.C. § 552; 28 U.S.C. § 1657; and FRCP 12(a)(2) (Courts are not required to automatically accord expedited treatment to a FOIA lawsuit; however, as with other civil actions, they may do so "if good cause therefore is shown.");

i.  Order Defendant to prepare an index pursuant to *Vaugh v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), for any documents it seeks to withhold under a FOIA exemption;

31

j.  Enjoin Defendant from continuing to withhold any and all non-exempt records responsive to Plaintiff's requests;

k.  Enjoin Defendant from its ongoing violations of FOIA by failing to publish its current FOIA guidance, policies, memoranda, and instructions;

l.  Retain jurisdiction of this action to ensure that no agency records are improperly withheld;

m. Award Plaintiff attorneys' fees and litigation costs incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

n.  Order such other relief as the Court may deem just and proper.

Dated: July 23, 2026                          Respectfully submitted,

                                              By: /s/ Gregory D. Luce

                                              Gregory D. Luce
                                              MN License # 0239628
                                              Attorney for Plaintiff
                                              Adoptee Rights Law Center PLLC
                                              4629 1st Ave S
                                              Minneapolis, MN 55419
                                              Telephone: (612) 221-3947
                                              greg@adopteerightslaw.com

32

By: /s/ Daniel Melo*

Daniel Melo
The Melo Law Firm
NC Bar # 48654
2920 Forestville Road, Ste 100
PMB 1192
Raleigh, NC 27616
Tel: (919) 348-9213
dan@themelolawfirm.com
*Pro Hac Vice application pending

By: /s/ Emily Burns*

Emily Burns
The Melo Law Firm
ME Bar # 011497
2920 Forestville Road, Ste 100
PMB 1192
Raleigh, NC 27616
Tel: (518) 423-8227
emily@themelolawfirm.com
*Pro Hac Vice application pending